UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tingting Wang,                                        Case No. 3:17-cv-691

         Plaintiff,

    v.                                                  MEMORANDUM OPINION
                                                              AND ORDER

China Wok, et al.,

         Defendants.

## I. INTRODUCTION

Defendants Jian Zheng and China Wok have filed a motion to dismiss Plaintiff Tingting Wang's claims under the Fair Labor Standards Act ("FLSA") for lack of subject matter jurisdiction or, in the alternative, for summary judgment on those claims. (Doc. No. 93).[1] Plaintiff filed a brief in opposition to the motion. (Doc. No. 95). Zheng and China Wok filed a brief in reply. (Doc. No. 97).

Separately, Defendants Goudong Yan and Xue Neng Weng filed a motion to bifurcate Plaintiff's claims against them. (Doc. No. 88). Plaintiff filed a brief in opposition. (Doc. No. 91). Yan and Weng filed a brief in reply. (Doc. No. 94).

---

[1] Defense counsel inadvertently failed to sign the first version of this motion. (*See* Doc. No. 89; Doc. No. 90). Counsel filed a corrected version after noticing the oversight. The initial motion, (Doc. No. 89), is denied as moot, in the light of the latter-filed motion.

For the reasons stated below, I grant Zheng and China Wok's motion in part and deny it in part, and deny Yan and Weng's motion without prejudice.

## II.  BACKGROUND

The parties have submitted a lengthy factual record, which I will briefly summarize. Wang immigrated to the United States from China in June 2009.[2] She met Zheng approximately a year later, through a mutual friend in New York. (Doc. No. 89-2 at 11-12). Within a few months, Wang moved to Ottawa, Ohio, where Zheng owned and operated a restaurant called China Wok. Wang asserts she came to work at China Wok in exchange for Zheng's promise to pay her $2,700 per month and to provide meals and lodging. Wang claims that, despite these promises, Zheng never paid her from the beginning of her employment in September 2010 through 2016.[3] (*See, e.g.,* Doc. No. 89-2 at 90).

At China Wok, Wang operated the cash register, answered the phone, kept the business's books, and signed for deliveries, including from Sysco Detroit, which delivered perishable food items to the restaurant. (Doc. No. 89-1 at 79-82).

Wang also claims that Zheng raped her shortly after she moved to Ottawa. (*See, e.g.,* Doc. No. 58 at 9-10). She alleges he falsely claimed he loved her and promised to marry her to cover up the rape. In October 2011, Wang and Zheng participated in a wedding ceremony in New York before their family and friends, and they subsequently had two children.

---

[2]  Wang became a United States citizen on July 4, 2015. (Doc. No. 89 at 11).

[3]  While Wang claims she never received any wages, Zheng provided her with IRS Form W2s for at least the years 2014, 2015, and 2016, and Wang filed tax returns in reliance on those W2s. (Doc. No. 95-4; Doc. No. 95-6). Wang also relies on the W2s in furtherance of her argument that she qualifies as an employee under the FLSA. (Doc. No. 95 at 6-7). Additionally, while Wang claims other individuals were employed at China Wok, Zheng's tax returns state he paid wages to employees in an amount equal to the amount stated on Wang's W2s and her tax returns. (*Cf.* Doc. No. 95-4 at 1 and Doc. No. 95-6 at 3 *with* Doc. No. 95-4 at 18).

2

In 2016, Wang left Zheng and returned to New York. She told Zheng she no longer wanted to live with him. She then initiated a case in family court in New York, seeking custody of their two children. She filed suit in this case a few months later, alleging violations of the FLSA as well as fraud.

While discovery in this case was proceeding, Zheng sold China Wok to Weng. Yan, who is married to Weng, previously worked as a cook at China Wok. Weng paid Zheng $5,000 for China Wok's fixtures, equipment, goodwill, intellectual property, and other tangible assets. (Doc. No. 91-5). Wang amended her complaint to add Weng and Yan as defendants, alleging they are liable as successors in interest for any damages awarded against Zheng and China Wok, and that they participated in the sale of China Wok as part of a fraudulent scheme to shield Zheng's assets.

Wang alleges (a) Defendants failed to pay her minimum wage compensation or overtime compensation as required by federal and state law (Counts 1 and 2); (b) Zheng's conduct toward her constitutes the intentional infliction of emotional distress (Count 3); (c) Zheng fraudulently induced her to accept employment at China Wok (Count 4); (d) Zheng, Weng, and Yan entered into a fraudulent sale of China Work in order to shield Zheng's assets in the event Wang obtained a damages award against him (Counts 5 and 6); and (e) Weng and Yan are liable for her unpaid wages as Zheng's successors-in-interest as owners of China Wok (Count 7). (Doc. No. 58).

Zheng and China Wok have filed a motion to dismiss, alleging Wang has failed to establish I have subject matter jurisdiction over her FLSA claims because she offers no evidence China Wok's annual gross revenues exceed $500,000, as required by statute to establish enterprise coverage, or that she individually was engaged in commerce, as required to establish individual coverage. (Doc. No. 93). In the alternative, Zheng and China Wok seek summary judgment on Wang's FLSA claims.

Yan and Weng have filed a motion to bifurcate Wang's claims against them pursuant to Rule 42(b), arguing that their liability, if any, could only be derivative of a finding of liability against Zheng and China Wok and therefore bifurcation of Wang's claims against Yan and Weng is appropriate so that those claims can be heard during a second trial if Wang prevails against Zheng and China Wok. (Doc. No. 88).

### III. ANALYSIS

#### A. SUBJECT MATTER JURISDICTION

A party may move to dismiss claims alleged against it for lack of subject matter jurisdiction by filing a motion under Rule 12. Fed. R. Civ. P. 12(b)(1). Section 1331 provides a federal court with original jurisdiction over claims alleging violations of federal law. 28 U.S.C. § 1331. A court which has original jurisdiction over a case pursuant to § 1331 also has supplemental jurisdiction over the plaintiff's state-law causes of action if those claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction of state-law claims if the "court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Zheng and China Wok argue I lack subject matter jurisdiction over Wang's FLSA claims because she has not demonstrated that China Wok has annual gross sales in excess of $500,000, as required by the FLSA. 29 U.S.C. § 203(s)(1)(A)(ii). While the Sixth Circuit has not explicitly addressed this issue, I agree with those district courts within this Circuit who have concluded that the gross-sales requirement is an element of the plaintiff's claim under the FLSA and is not a jurisdictional prerequisite. *See, e.g., Gulden v. Menages, Inc.*, No. 3:14-cv-1041, 2014 WL 4232791, *2 (M.D. Tenn. Aug. 25, 2014) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006) (holding

4

Title VII coverage elements are not jurisdictional)). Therefore, I deny Zheng and China Wok's motion to dismiss for lack of subject matter jurisdiction.

As I discuss below, I agree with Zheng and China Wok's alternate argument and conclude they are entitled to summary judgment on Wang's FLSA claims. I also conclude, however, that I have jurisdiction over her remaining state-law claims. Though Zheng and China Wok argue I should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Wang's state-law claims, they fail to address Wang's allegations that I have subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (*See* Doc. No. 58 at 3).

Section 1332 provides for original jurisdiction in civil actions where the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Wang alleges she is a resident of New York and that each of the Defendants is a resident of Ohio or of California. (Doc. No. 58 at 3, 6-7). Further, she seeks compensatory and punitive damages in excess of $100,000 on her state-law claims. (*Id.* at 13). Thus, the allegations of the complaint establish a basis for diversity jurisdiction under § 1332. Zheng and China Wok fail to show I have discretion to dismiss Wang's state-law claims by declining to exercise supplemental jurisdiction under § 1367.

### B. SUMMARY JUDGMENT

Zheng and China Wok argue they are entitled to summary judgment on Wang's FLSA claims for failure to pay minimum wage and unpaid overtime compensation because (i) China Wok's gross sales do not meet or exceed the statutory minimum of $500,000 required for enterprise coverage; (ii) Wang was not engaged in commerce as required for individual coverage; and (iii) Wang operated the business as a co-owner or co-manager with Zheng and shared in the profits generated by the business. (Doc. No. 93).

Wang disputes these arguments. She contends (i) Zheng instructed her, as the restaurant's bookkeeper, to understate the amount of the restaurant's daily sales, typically by $1,000 or more; (ii) she regularly took customer orders by telephone and was responsible for ordering food supplies from Sysco Detroit and processing the delivery of those supplies; and (iii) Zheng was a sole proprietor who treated her as an employee only and who sold the business without consulting her and without paying her any of the proceeds from the sale. (Doc. No. 95).

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

A plaintiff may be entitled to minimum wage compensation and overtime pay under the FLSA[4] if the plaintiff is employed by "an enterprise engaged in commerce or the production of goods for commerce" (enterprise coverage), or if the plaintiff herself is "engaged in commerce or in the production of goods for commerce" (individual coverage). *Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 803 (N.D. Ohio 1996). A business must conduct at least $500,000 in annual gross sales in order to establish enterprise coverage. *See, e.g., Wise v. T-Man, LLC*, No. 1:14 CV 630, 2016 WL 3544715, at *4 (N.D. Ohio June 29, 2016) (citing 29 U.S.C. § 203(s)(1)). Even if an individual's

---

[4] Caselaw interpreting and applying the FLSA also applies to claims under wage claims under Ohio law. *Wise v. T-Man, LLC*, No. 1:14 CV 630, 2016 WL 3544715, at *4-*5 (N.D. Ohio June 29, 2016).

6

employer is not subject to enterprise coverage, the individual employee may be covered by the FLSA if the individual made "regular use of the instrumentalities of interstate commerce, such as regular and recurrent use of telephones, telegraph, mails[,] or travel." *Fernandez v. Deegan Mgmt., Inc.*, No. 1:11 CV 1220, 2012 WL 1565383, at *1 (N.D. Ohio May 2, 2012) (citing *Thorne v. All Restoration Services, Inc.,* 448 F.3d 1264, 1266 (11th Cir.2006)). It is the plaintiff's burden to show there was an employer-employee relationship. *Kowalski*, 920 F. Supp. at 806.

The parties first dispute whether China Wok qualifies for enterprise coverage. Zheng and China Wok argue it does not because China Wok's records – kept by Wang – show China Wok did not bring in more than $500,000 in sales. (*See* Doc. No. 93 at 8). Wang claims these records are not trustworthy, because Zheng instructed her to record a lower daily amount than the business actually received, often $1,000 less. (Doc. No. 89-1 at 103-04). Zheng and China Wok argue Wang's allegations cannot create a genuine issue of material fact because she is not credible and her claim is "unsubstantiated." (Doc. No. 97 at 4).

Zheng and China Wok's arguments are not persuasive. First, the credibility of witnesses is not a matter that is appropriate to resolve at the summary judgment stage. *White*, 533 F.3d at 390 ("[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." (quoting *Anderson*, 477 U.S. at 249)). Second, the Sixth Circuit has held an FLSA plaintiff's deposition testimony alone may be sufficient to defeat the employer's summary judgment motion. *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015). Finally, Zheng's tax returns raise questions concerning whether he kept accurate records of China Wok's sales or if he accurately reported China Wok's gross sales. (*Cf.* Doc. No. 95-4 at 6 (reporting $137,916 in gross sales on Zheng's 2013 tax return) *with* Doc. No. 93 at 64 (compilation of daily receipts indicating $301,430 in sales in 2013)).

7

The parties also dispute whether Wang is entitled to minimum-wage and overtime compensation under the individual-coverage theory. Zheng and China Wok argue Wang fails to show she spent a substantial portion of her time engaged in commerce because China Wok is a "fundamentally intrastate business." (Doc. No. 97 at 5). Wang claims her regular communications with Sysco Detroit are sufficient for a jury to find in her favor. Wang's arguments, however, prove too much.

Wang's interactions with Sysco were not limited to placing orders and accepting deliveries. Wang signed Sysco's term sheet as China Wok's authorized agent, representing she had the authority to contractually bind China Wok and to grant Sysco a continuing security interest in China Wok's tangible and intangible property in the event China Wok failed to pay invoices Sysco issued for goods provided. (Doc. No. 93 at 17). She also personally guaranteed[5] China Wok's account as a person "having a financial interest in [China Wok]." (*Id.*). Further, Wang accepted inspection reports from the Ohio Department of Health on behalf of China Wok. (*Id.* at 20-21).

Wang also admits using money from the business to pay for a trip to Las Vegas, (Doc. No, 89-1 at 123), possessing credit cards in her name paid for with business proceeds and used to buy things for the business, (Doc. No. 89-2 at 21-22), and signing checks on behalf of China Wok. (*Id.* at 81). She told Zheng she did not think it was a good idea to borrow money to operate the business. (Doc. No. 89-1 at 73). Additionally, Wang told Zheng one of the cooks at the restaurant continued to make errors in food preparation. (*Id.* at 73-75).

"Whether an employment relationship exists under a given set of circumstance 'is not fixed by labels that parties may attach to their relationship. . .'" but by the "economic reality" of the

---

[5] Wang asserts her "English was and is not adequate to understand the content of this document." (Doc. No. 93 at 35). Whether or not Wang may have a potentially-successful defense to a breach of contract action brought by Sysco on the supply agreement or the personal guarantee does not affect the appropriately-drawn inference that Wang acted as China Wok's agent in executing these agreements.

8

relationship. *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011) (quoting *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 528 (1950)). These facts, even when viewed in the light most favorable to Wang, support the conclusion that the parties' "economic reality" is more like a partnership than an employer-employee relationship.

The Fourth Circuit's decision in *Steelman v. Hirsch*, 473 F.3d 124 (4th Cir. 2007), provides a valuable parallel. In that case, the plaintiff and defendant were in a romantic relationship, operated a small business together, and shared in the profits generated by the business. The plaintiff filed suit after the parties' personal and professional relationships disintegrated. The Fourth Circuit affirmed the district court's rejection of the plaintiff's FLSA claims, determining the parties' relationship differed "substantially from the traditional employment paradigm." *Id.* at 131. The Fourth Circuit concluded "when long-term partners perform many of the same duties in a small business and live off its proceeds, with each free to incur substantial personal expenses paid by the business, we do not confront the employer-employee relationship that the FLSA contemplates." *Id.* at 132.

The W2s China Wok issued to Wang and the fact that Wang and Zheng were never legally married do not change the outcome. The parties' labels of their relationship, or the formal status of their personal relationship, do not rebut the economic reality of their professional relationship. *Solis*, 642 F.3d at 522.

While Wang identifies a genuine dispute of material fact concerning whether China Wok may be subject to enterprise coverage, I conclude she fails to show a jury could determine she qualifies as a covered employee under the FLSA pursuant to either the enterprise coverage or the individual coverage theories. Therefore, Zheng and China Wok are entitled to summary judgment on Wang's minimum-wage and overtime-compensation claims.

### C. MOTION TO BIFURCATE

As Yan and Weng note, Rule 42 permits a court to order a separate trial on one or more issues, claims, or counterclaims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). A court may order bifurcation if at least one of these criteria is met, after assessing the facts and circumstances of the case. *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996).

Yan and Weng argue I should bifurcate Wang's claims against them because their liability would be derivative of that of Zheng and China Wok and, therefore, a trial of the claims against them may be unnecessary. (Doc. No. 88 at 4). They also assert bifurcation will save time and money, because all parties likely will require interpreters, increasing costs if all claims are tried together. (*Id.* at 5).

Yan and Weng's arguments are not persuasive. First, the case cannot be easily divided into claims against Zheng and China Wok and claims against Yan and Weng, as most of the claims Wang brings against Yan and Weng also involve Zheng. Therefore, some of Wang's causes of action against Zheng would need to be tried at a second trial involving Yan and Weng. This would substantially increase time and costs, likely dwarfing any resources saved if a jury found in Zheng's favor at the first trial.

Second, Yan and Weng fail to show that any potential prejudice or jury confusion cannot be comprehensively addressed through proper jury instructions. *See, e.g., In re E. I. Du Pont De Nemours & Co. C-8 Pers. Injury Litig.*, No. CV 2:13-MD-2433, 2019 WL 2088768, at *15 (S.D. Ohio May 13, 2019) ("[A]ny potential risks of prejudice or confusion may be avoided through the organized presentation of evidence and cautionary jury instructions."); *Atwood v. UC Health*, No. 1:16CV593, 2019 WL 6877643, at *5-6 (S.D. Ohio Dec. 17, 2019) (denying defendants' Rule 59 motion because

jury interrogatories showed jurors differentiated between punitive-damage claims against each of the six defendants).

The law presumes jurors will follow the court's instructions, including instructions that they may not find some parties liable unless they first have found certain other parties to be liable. *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) ("The jury system is premised on the idea that rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions."). Therefore, I conclude Yan and Weng have failed to show bifurcation would save time or money or that they will be unfairly prejudiced by a joint trial.

## IV. CONCLUSION

For the reasons stated above, I deny the portion of Zheng and China Wok's motion seeking to dismiss Wang's claims for lack of subject matter jurisdiction and grant the portion of their motion seeking summary judgment on Wang's claims for minimum-wage and overtime compensation under the Fair Labor Standards Act and Ohio law. (Doc. No. 93). I deny Zheng and China Wok's initial motion, (Doc. No. 89), as moot, in the light of their latter-filed motion.

Further, I deny Weng and Yan's motion to bifurcate a trial in this case. (Doc. No. 88).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge